| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
|---|---|---|
| TRUENORTH, CORP.<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE SUBASTA DEL DEPARTAMENTO DE LA VIVIENDA<br><br>Parte Recurrida | TA2025RA00094 | *Revisión de Decisión Administrativa* procedente del Departamento de la Vivienda<br><br>Sobre:<br><br>Revisión Administrativa de *Request for Propossal CDBG - DRMIT-RFP-2024-05* |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Rivera Torres y la Jueza Trigo Ferraiuoli[1].

Trigo Ferraiuoli, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2026.

Comparece Truenorth, Corp., en adelante Truenorth o parte recurrente, y solicita que revoquemos la *Resolución* emitida por la Junta de Subasta del Departamento de la Vivienda de Puerto Rico, en adelante Junta de Subasta del DVPR o parte recurrida, y notificada el 11 de junio de 2025. Mediante dicho dictamen, la Junta de Subasta del DVPR canceló el Requerimiento de Propuestas identificado como CDBG-DRMIT-RFP-2024-05, en adelante RFP, por sus siglas en inglés, y dejó sin efecto la adjudicación previamente emitida a favor de Truenorth.

### I. Trasfondo fáctico y procesal

Según surge del expediente, el 23 de septiembre de 2024, el DVPR publicó un RFP dirigido a la contratación de servicios de consultoría en tecnología de información para los programas de subvención en bloque para el desarrollo comunitario: recuperación

---

[1] Véase Orden Administrativa OATA-2025-170, en la que se designó a la Jueza Trigo Ferraiuoli en sustitución de la Juez Lebrón Nieves.

ante desastres (CDBG-DR[2], por sus siglas en inglés) y subvención en bloque para el desarrollo comunitario: mitigación (CDBG-MIT[3], por sus siglas en inglés).[4] Las propuestas debían presentarse en o antes del 24 de octubre de 2024 a las 4:00 p.m. Se desprende de los hechos que se recibieron diecisiete (17) propuestas, de las cuales trece (13) fueron presentadas dentro del término establecido y cuatro (4) fueron sometidas tardíamente.[5]

Luego de culminado el proceso de evaluación, el 27 de mayo de 2025, la Junta de Subastas del DVPR emitió una resolución mediante la cual adjudicó el RFP a favor de Truenorth.[6] Posteriormente, el 30 de mayo de 2025, el Departamento de Vivienda de Puerto Rico, en adelante, DVPR o PRDOH, por sus siglas en inglés, notificó el *Notice of Award* correspondiente.[7] En dicho aviso, se informó que Truenorth había sido clasificada como proponente "Highly Qualified" y que la adjudicación contemplaba un contrato por tres años, con opción de dos extensiones adicionales de un año, por un valor total de $1,558,800.00.[8]

El *Notice of Award* también incluyó un resumen del proceso de evaluación. En lo pertinente, se indicó que Quantum Vision, LLC, en adelante, Quantum, había sido considerada inicialmente como no responsiva por presuntamente no haber presentado ciertos documentos requeridos, entre ellos, carta de presentación, resumen ejecutivo, enfoque de trabajo e información relacionada con personal adicional, resumé o experiencia. Como consecuencia de esa

---

[2] CDBG-DR es una financiación adicional asignada por el Congreso de los Estados Unidos para reconstruir las zonas afectadas y proporcionar los fondos iniciales necesarios para iniciar el proceso de recuperación. Véase, Entrada 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), apéndice 3, pág. 4.

[3] CDBG-MIT es una financiación asignada por el Congreso de los Estados Unidos para actividades de planificación a largo plazo y mitigación de riesgos, con el fin de llevar a cabo actividades estratégicas y de gran impacto para mitigar los riesgos de desastres y reducir pérdidas futuras. *Íd.*

[4] Entrada 3 de SUMAC TA.

[5] Entrada 1 de SUMAC TA, apéndice 1.

[6] *Íd.,* apéndice 2, pág. 2 y apéndice 4.

[7] *Íd.,* apéndice 5.

[8] *Íd.,* apéndice 4, págs.17-20; apéndice 5, págs. 2 y 21.

determinación, la propuesta de Quantum no pasó a las fases de evaluación técnica ni de costos.[9]

Tras la notificación de la adjudicación a favor de Truenorth, Quantum presentó una comunicación ante la División de Adquisiciones del Departamento de la Vivienda, en adelante, División de Adquisiciones. En esta, sostuvo que su propuesta había sido considerada no responsiva pese a que había sometido oportunamente los documentos cuya ausencia se le atribuyó.[10] Como resultado de una revisión interna preliminar, la División de Adquisiciones concluyó que, por inadvertencia administrativa, parte de la propuesta de Quantum no había sido revisada ni evaluada por el Comité Evaluador.[11]

Ante ese hallazgo, la División de Adquisiciones emitió un *Request for Review Memorandum* mediante el cual recomendó una acción correctiva para garantizar que todos los proponentes fueran evaluados en igualdad de condiciones. No obstante, la Junta de Subastas del DVPR determinó no acoger dicha recomendación y, en su lugar, resolvió cancelar en su totalidad el RFP.[12]

Así, mediante resolución emitida el 9 de junio de 2025 y notificada el 11 de junio de 2025, la Junta de Subastas del DVPR canceló el proceso competitivo y dejó sin efecto la adjudicación previamente emitida a favor de Truenorth.[13] La Junta de Subastas fundamentó su determinación en que una propuesta presentada dentro del término requerido había sido excluida inadvertidamente del proceso de evaluación, lo que impidió que el Comité Evaluador realizara una evaluación completa, justa y equitativa de todas las propuestas elegibles.[14]

---

[9] Entrada 1 de SUMAC TA, apéndice 5, págs. 9-10.
[10] *Íd.*, apéndice 2, pág. 4
[11] *Íd.*
[12] *Íd.*, pág. 5.
[13] *Íd.*, apéndice 1 y 6.
[14] *Íd.*

Inconforme con la referida cancelación, el 20 de junio de 2025, Truenorth presentó una *Solicitud de Revisión Administrativa* ante la Junta Revisora de Subastas de la Administración de Servicios Generales (ASG), en adelante, Junta Revisora de Subastas ASG. En suma, planteó que la Junta de Subastas del DVPR erró al cancelar la totalidad del RFP, pues existían remedios menos onerosos que permitían corregir la situación relacionada con Quantum sin dejar sin efecto la adjudicación a su favor.[15]

En apoyo de su solicitud, Truenorth sostuvo que la cancelación total del RFP le ocasionaba un perjuicio sustancial, toda vez que, luego de la adjudicación inicial, se había divulgado información relacionada con su propuesta, incluidos los aspectos económicos, técnicos y estratégicos. A su juicio, cancelar el proceso y celebrar uno nuevo la colocaría en una desventaja competitiva frente a los demás proponentes, quienes ya conocían elementos esenciales de su propuesta.[16]

Como remedio, Truenorth solicitó que se revocara la cancelación del RFP y se mantuviera la adjudicación a su favor. En la alternativa, propuso que se realizara una evaluación limitada entre su propuesta y la de Quantum, a fin de emitir un nuevo *Notice of Award* sin cancelar completamente el proceso competitivo.[17]

Según sostuvo Truenorth, la Junta Revisora de Subastas ASG contaba con un término de diez (10) días para determinar si acogía o no la solicitud de revisión administrativa. Dicho término venció el 30 de junio de 2025, sin que la Junta Revisora de Subastas ASG actuara sobre la solicitud. Por ello, Truenorth alegó que la solicitud quedó rechazada de plano y que, a partir de esa fecha, comenzó a

---

[15] Entrada 1 de SUMAC TA, apéndice 1 y 6.
[16] *Íd.*
[17] *Íd.*

transcurrir el término jurisdiccional de veinte (20) días para acudir en revisión judicial ante el Tribunal de Apelaciones.[18]

Así las cosas, el 18 de julio de 2025, Truenorth presentó el recurso de autos y formulo el siguiente señalamiento de error:

> Erró el Departamento de Vivienda al cancelar el proceso de Requerimiento de Propuestas (RFP) CDBG-DRMIT-RFP-2024-05, ocasionando un daño irreparable a Truenorth al haberse revelado información confidencial al adjudicarse el proceso cuando existen remedios menos drásticos y que a su vez garantizan los principios de un proceso justo y equitativo para todas las partes.

(Negrillas omitidas).[19]

Posteriormente, el 15 de agosto de 2025, el DVPR presentó su oposición al recurso de revisión judicial. En síntesis, sostuvo que la Junta de Subastas del DVPR actuó dentro de la autoridad conferida por el *Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal* del Departamento de la Vivienda de Puerto Rico, Núm. 9506, aprobado el 25 de septiembre de 2023, en adelante, Reglamento Núm. 9506, y por las reservas de derechos contenidas en el RFP al cancelar el proceso, toda vez que la exclusión inadvertida de una propuesta presentada oportunamente comprometió la competencia plena, el trato igual, la transparencia y la evaluación justa de todas las propuestas elegibles.[20]

El 18 de agosto de 2025, Truenorth presentó *una Réplica a Oposición a Recurso de Revisión Judicial.* En síntesis, aclaró que no cuestionaba la autoridad de la Junta de Subastas del DVPR para cancelar un RFP, sino la proporcionalidad del remedio adoptado. Por ello, solicitó nuevamente que se revocara la cancelación del RFP y que, como remedio menos lesivo, se ordenara evaluar la propuesta de Quantum en comparación con la propuesta ya adjudicada de Truenorth.[21]

---

[18] Entrada 1 de SUMAC TA, apéndice 1 y 6.
[19] *Íd.*
[20] Entrada 5 de SUMAC TA.
[21] Entrada 6 de SUMAC TA.

Con la comparecencia de ambas partes, resolvemos.

## II. Exposición del Derecho

### A. Revisión Judicial

Es doctrina reiterada que las determinaciones de los organismos administrativos gozan de una amplia deferencia judicial, en reconocimiento de la pericia y conocimiento especializado que estas entidades poseen sobre las materias que la ley les ha encomendado atender. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). En consecuencia, al revisar una decisión administrativa, los tribunales deben regirse primordialmente por el criterio de razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

De igual forma, las decisiones administrativas están revestidas de una presunción de corrección y validez, por lo que corresponde a la parte recurrente derrotar dicha presunción y colocar al tribunal revisor en posición de conceder el remedio solicitado. *Morán v. Martí*, 165 DPR 356, 366 (2005). Así, las determinaciones de hechos formuladas por las agencias administrativas se presumen correctas y deben sostenerse mientras quien las impugne no presente evidencia suficiente para desvirtuarlas. *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

En ese contexto, el alcance de la revisión judicial de una determinación administrativa se limita a examinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos están respaldadas por evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Por ello, la función revisora de los tribunales no consiste en sustituir el criterio de la agencia por el suyo propio, sino en determinar si la actuación administrativa fue arbitraria, ilegal,

irrazonable o excedió los poderes delegados por ley. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004). Consecuentemente, la deferencia judicial cederá únicamente cuando se demuestre que: (1) la determinación administrativa carece de apoyo en evidencia sustancial; (2) la agencia incurrió en error al interpretar o aplicar la ley o los reglamentos cuya administración le fue encomendada; (3) actuó de manera arbitraria, irrazonable o ilegal, sin una base racional que sustente su decisión; o (4) su actuación lesionó derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021), citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), e *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

### B. Reglamentación sobre Subastas

La Ley Núm. 97 del 10 de junio de 1972, según enmendada, intitulada *Ley Orgánica del Departamento de la Vivienda*, 3 LPRA sec. 441 *et seq.*, en adelante, Ley Núm. 97-1972, creó un departamento ejecutivo de gobierno con el nombre de Departamento de la Vivienda (DVPR). 3 LPRA sec. 441a. La referida ley establece que el DVPR es el organismo gubernamental responsable de elaborar y ejecutar la política publica de vivienda y desarrollo comunal del Estado Libre Asociado de Puerto Rico, así como de administrar los programas gubernamentales relacionados con dicho campo. 3 LPRA sec. 441b. Entre las facultades conferidas al Secretario se encuentra planificar, dirigir y supervisar el funcionamiento del departamento y sus programas, así como prescribir, derogar y enmendar reglamentos para el funcionamiento del departamento. 3 LPRA sec. 441c (d) y (e).

En virtud de esa autoridad, el DVPR promulgó el *Reglamento de Subastas del Departamento la Vivienda y sus Agencias Adscritas,* Reglamento Núm. 6106 del 25 de febrero de 2000. Dicho reglamento tiene como propósito establecer el procedimiento aplicable a toda

subasta o solicitud de propuesta para la adquisición o disposición que se efectúe en el departamento y sus agencias adscritas. Sec. 1.3 del Reglamento Núm. 6106. Además, regula la organización, operación y deberes de los miembros que componen la Junta de Subastas. *Íd.*

Por su parte, el Reglamento Núm. 9506 se adoptó conforme a la autoridad conferida al DVPR por la Ley Núm. 97-1972. El propósito de dicho reglamento es instituir estándares y directrices para la adquisición de bienes, suministros, equipo, construcción, ingeniería, arquitectura y otros servicios profesionales y no profesionales para los programas CBDG-DR, CDBG-MIT Y CBDG Estatal. Sec. 1.4 del Reglamento Núm. 9506. A su vez persigue garantizar que las adquisiciones se conduzcan de forma adecuada, mediante competencia plena abierta, o un trato justo a todas las personas o entidades involucradas en los procesos financiados total o parcialmente con fondos federales. *Íd.*

A esos fines, el Artículo IV del Reglamento Núm. 9506 del DVPR crea la Junta de Subasta o Licitación del DVPR. La misma está a cargo de evaluar y adjudicar ofertas y propuestas en los procesos de subastas formales e informales para la adquisición de bienes o servicios no personales y servicios profesionales, a través de un proceso formal de adquisición que el DVPR, lleva a cabo bajo los Programas Estatales CDBG-DR, CDBGMIT y CDBG, de acuerdo con la normatividad aplicable.

Ahora bien, en lo pertinente al caso de autos, además de la Ley Núm. 97-1972, el Reglamento Núm. 6106 y el Reglamento Núm. 9506, el proceso de adjudicación y cancelación de una subasta debe examinarse a la luz de los términos particulares del CDBG-DRMIT-RFP-2024-05 (RFP, como indicamos antes). Ello responde a que el Reglamento Núm. 9506 reconoce la solicitud de propuestas como un método competitivo de adquisición, mientras que el RFP

establece las condiciones específicas bajo las cuales los proponentes sometieron sus propuestas y bajo las cuales el DVPR se reservó determinados derechos durante el proceso.

En lo pertinente, la Sección 2.3 del RFP, intitulada *PRDOH's Reservation of Rights*, dispone que el DVPR se reservó, sin limitaciones, el derecho a rechazar cualquier propuesta, dispensar informalidades en el proceso o terminar el proceso de RFP en cualquier momento si ello se estimaba en su mejor interés. Asimismo, el DVPR se reservó el derecho de cancelar la solicitud y reemitir el RFP, u otra versión de este, si entendía que ello respondía al interés público.[22]

La Sección 2.3 también reservó al DVPR el derecho de contratar con uno o más proponentes cualificados como resultado de la selección de proponentes cualificados o de la cancelación del RFP. De esta forma, desde la convocatoria inicial, los proponentes fueron advertidos de que la emisión del RFP no eliminaba la discreción del DVPR para cancelar el procedimiento, reemitirlo o contratar conforme al mejor interés público y a los objetivos del proceso de adquisición.[23]

En ese sentido, la Sección 10.14 del RFP, intitulada *Rejection of Proposals and Cancellation of RFP,* advierte expresamente que la emisión del RFP no constituye un compromiso del Gobierno de Puerto Rico ni del DVPR de adjudicar un contrato. Dicha sección reserva al DVPR, sin limitaciones, el derecho de aceptar o rechazar, total o parcialmente y sin explicación adicional, cualquiera o todas las propuestas sometidas, así como cancelar la solicitud y reemitir el RFP u otra versión de este cuando entienda que ello responde al

---

[22] Entrada 1 de SUMAC TA, apéndice 3, págs. 7-8.
[23] *Íd.*

mejor interés público, del Gobierno de Puerto Rico, del DVPR o de las comunidades impactadas.[24]

De otra parte, la Sección 10.15 del RFP regula la confidencialidad de las respuestas e información propietaria. Dicha disposición establece que, una vez culminado el proceso de RFP, el DVPR hará público su informe sobre el proceso de cualificación, adquisición y selección, el cual contendrá información relacionada con el RFP, excepto secretos de negocio, información propietaria o información privilegiada y confidencial de los proponentes que haya sido identificada como tal por estos. Por ello, el RFP sugirió a los proponentes presentar una copia censurada de sus propuestas al momento de la sumisión.[25]

La Sección 10.15 define la copia censurada como aquella propuesta modificada, editada o revisada para remover información confidencial o sensitiva. Asimismo, advierte que, si un proponente no somete una copia censurada, el DVPR asumirá que la copia original de la propuesta puede hacerse pública. También dispone que el DVPR no puede garantizar que todo reclamo de confidencialidad o información propietaria será honrado y que la información marcada como confidencial o propietaria podrá divulgarse si así lo requiere la ley.[26]

### III. Aplicación del Derecho a los Hechos

La parte recurrente señala que el DVPR incidió al cancelar el proceso de RFP, pues, a su entender, dicha determinación le ocasionó un daño irreparable tras haberse revelado información confidencial de su propuesta, a pesar de que existían remedios menos drásticos para atender la omisión relacionada con la propuesta de Quantum. *No le asiste la razón.*

---

[24] Entrada 1 de SUMAC TA, apéndice 3, a la pág. 37.
[25] *Íd.,* págs. 37-38.
[26] *Íd.*

Según surge del expediente, luego de adjudicado el RFP a favor de Truenorth, el DVPR advino en conocimiento de que la propuesta de Quantum, presentada dentro del término establecido, no fue evaluada por inadvertencia administrativa. Ante ese escenario, la Junta de Subastas no estaba frente a un mero defecto menor o subsanable dentro de una propuesta ya evaluada, sino ante una omisión que afectó directamente la consideración de una propuesta elegible dentro del proceso competitivo.

Esa circunstancia incidía sobre la integridad del procedimiento de evaluación. La adjudicación inicial a favor de Truenorth se emitió sin que el Comité Evaluador hubiese considerado todas las propuestas presentadas oportunamente. Por tanto, la Junta de Subastas contaba con una base suficiente para razonar que el proceso no había garantizado una evaluación completa, justa y equitativa de todos los proponentes elegibles. Así, la cancelación del RFP no fue una determinación arbitraria, sino una medida adoptada para preservar los principios de competencia abierta, transparencia e igualdad de trato que rigen este tipo de procedimiento.

Tampoco persuade el argumento de la parte recurrente de que la agencia estaba obligada a adoptar un remedio menos drástico, como limitar la evaluación a su propuesta y la de Quantum. Aunque esa alternativa podía beneficiar la posición procesal de Truenorth, no protegía la totalidad del proceso competitivo ni los derechos de los demás proponentes que participaron bajo las mismas condiciones del RFP. Lo cierto es que una evaluación limitada entre dos proponentes alteraría el procedimiento originalmente convocado y crearía un remedio correctivo parcial, en vez de restablecer la igualdad de condiciones para todos los participantes.

Además, el propio RFP advertía a los proponentes que el DVPR se reservaba el derecho de cancelar la solicitud, reemitirla o rechazar

propuestas si ello respondía al interés público o al mejor interés del DVPR. Por tanto, Truenorth participó en el proceso con conocimiento de que la emisión del RFP y aun la adjudicación inicial no eliminaban la facultad de la agencia para cancelar el procedimiento conforme a disposiciones de la convocatoria del RFP y sus reglamentos aplicables.

En cuanto al alegado daño irreparable por la divulgación de información confidencial, el expediente tampoco justifica revocar la determinación administrativa. El RFP establecía un mecanismo para proteger secretos de negocio, información propietaria o información privilegiada mediante la presentación de una copia censurada de la propuesta. Incluso, advertía que, si el proponente no sometía una copia censurada, el Departamento asumiría que la propuesta original podía hacerse pública. En ese sentido, la divulgación alegada por Truenorth no convierte automáticamente en irrazonable la cancelación del proceso, particularmente cuando dicha cancelación respondió a una falla sustancial en la evaluación de una propuesta presentada oportunamente.

En conclusión, la actuación del DVPR tuvo apoyo en el expediente administrativo y en las facultades expresamente reservadas en el RFP. La Junta de Subastas identificó una omisión que comprometía la evaluación de todas las propuestas elegibles y optó por cancelar el proceso para salvaguardar la integridad del procedimiento. No corresponde a este Tribunal sustituir el criterio técnico-administrativo de la Junta de Subastas del DVPR sobre cuál remedio preservaba mejor la competencia y la igualdad entre todos los proponentes. En ausencia de una demostración de arbitrariedad, ilegalidad o irrazonabilidad, procede sostener la determinación administrativa recurrida. Por tanto, resolvemos que el error señalado no se cometió.

**IV. Parte Dispositiva**

Por los fundamentos antes expuestos, **confirmamos** la *Resolución* emitida por la Junta de Subastas del DVPR, mediante la cual se canceló el CDBG-DRMIT-RFP-2024-05.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones